UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:12-cv-945 |
| | § | |
| | § | |
| GUADALUPE GUERRA, Individually | § | |
| and d/ba/ POLO'S BAR and | § | |
| d/b/a POLO'S SPORTS BAR | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion to Dismiss ("Motion"). (Doc. No. 12.) After considering the Motion, the response and reply thereto, and the applicable law, the Court concludes that the Motion should be **DENIED**.

**I. Facts**

Plaintiff asserts claims for violations of the Communications Act of 1934, 47 U.S.C. §§ 553 and 605. (Compl. ¶¶ 16-17.) Plaintiff alleges that it was the license company authorized to sub-license the closed-circuit telecast of the March 28, 2009 "Latin Fury Tijuana Thunder: Chavez, Jr. v. Cuello, WBO Latino Light Middleweight Championship Fight Program." (the "Program") (*Id.* at ¶5).  The Program was not available to the public, and could only be exhibited in a commercial establishment if the establishment was contractually authorized by the Plaintiff. (*Id.* at ¶6.) Plaintiff states it safeguarded against illegal interception of the Program by electronically coding or scrambling the interstate satellite transmission of the Program. (*Id.* at ¶8.)

1

On March 28, 2009, Plaintiff claims that Defendant willfully intercepted or assisted in the receipt of the interstate communication of the Program. (*Id.* at ¶11.) Defendant then allegedly transmitted and/or published the Program to the patrons at his sports bar. (*Id.*). Plaintiff states that Defendant never contracted with Plaintiff nor paid Plaintiff to broadcast the Program.

On March 28th, 2012, Plaintiff filed its Complaint against the Defendant. (Doc. No. 1). Defendant now brings his Motion, arguing that a two year statute of limitation should apply, which would bar Plaintiff's claim, since the Program was allegedly shown on March 28, 2009.

**II. Legal Standard**

Defendant moves the court to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim for which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.,* 339 F.3d 359, 366 (5th Circ. 2003); *Griffin v. Round Rock Indep. Sch. Dist.,* 82 F.3d 414, *1-*2 (5th

2

Cir. 1996) (affirming dismissal with prejudice where claims were barred by statute of limitations).

**III. Analysis**

The Federal Communications Act (the "FCA"), which includes both §§ 553 and 605, does not specify a statute of limitations for actions by licensees. *Prostar v. Massachi,* 239 F.3d 669, 671 (5th Cir. 2001). When Congress amended the FCA with the Cable Act in 1984, Congress did not provide a statute of limitations. *Kingvision Pay-Per-View, Ltd. v. Betancourt*, CIV.A. H-11-0236, 2011 WL 1900166 (S.D. Tex. May 19, 2011); *J & J Sports Productions, Inc. v. Orellana*, CIV.A. H-11-0574, 2011 WL 3021861 (S.D. Tex. July 22, 2011). For those federal statutes without a statute of limitations, like the FCA, that were enacted before December 1, 1990, the rule is to "borrow" the most analogous state limitations period or federal limitations period. *Id.* The Supreme Court has established rules for determining the correct statute of limitations to borrow when a federal statute does not provide a statute of limitations. *North Star Steel Co. v. Thomas,* 515 U.S. 29, 34 (1995). If a federal statute "fails to provide any limitations period for a new cause of action, this Court's longstanding and settled practice has been to borrow the limitations period from the most closely analogous state statute." *Id.* at 33. The Supreme Court has recognized an exception when the application of the state's statute of limitations would "frustrate or interfere with the implementation of national policies," or be "at odds with the purpose or operation of federal substantive law." *Id.* When this exception applies, the court may apply a federal statute of limitations rather than the most analogous state law. However, "a federal source must truly afford a closer fit with the cause of action at issue than does any available state law source." *Lampf, Pleva, Lipkind,*

*Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 357 (1991); *Reed v. United Transp. Union*, 488 U.S. 319, 327, (1989); *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 172(1983).

The Supreme Court has not determined the applicable limitations period for claims under the FCA. However, the Fifth Circuit did in *Prostar v. Massachi,* 239 F.3d 669, 671 (5th Cir. 2001), a case governed by Louisiana law. In *Prostar*, the Fifth Circuit recognized that a federal limitations period should be borrowed only where it "clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." *Prostar*, 239 F.3d at 672. Specifically, *Prostar* instructed courts to engage in three successive levels of analysis:

> First, courts must "characterize the essence" of the statute in question to determine which state cause of action is most analogous. Second, courts must determine whether application of the state limitations period would frustrate the policies underlying the federal law or impede its practical implementation. If a state limitations period would not generate such adverse consequences, then the state limitations period applies and our inquiry is concluded. However, if a conflict is apparent, then courts must examine whether the federal interest in uniformity mandates the application of an analogous federal standard. This third level of analysis requires courts to examine whether federal law affords a closer analogy than state law. *Id.* at 672-73.

After engaging in the three levels of analysis, the Fifth Circuit in *Prostar* applied the Copyright Act's three year statute of limitations, rather than Louisiana's one year statute of limitations, to the FCA. In doing so, the Fifth Circuit held that the most analogous Louisiana law to the FCA was the tort of conversion, and applying Louisiana law to cable piracy claims "would undermine the implementation of the FCA." *Prostar*, 239 F.3d at 676. Because the state statute at issue in this case is not the Louisiana

conversion law, this Court will engage in the three levels of analysis instructed by

*Prostar*.

**A. Determine Texas' Most Analogous State Action to the FCA**

First, the Court must characterize the essence of the statute in question to

determine which state cause of action is most analogous. *Prostar* characterized the

essence of the FCA statute:

> The legislative history associated with section 553 and the amendments to section 605 reveals that one of Congress's principal objectives was to discourage theft of cable services. To that end, Congress articulated a variety of penalties and remedies to protect the revenue of television cable companies from unauthorized reception of their transmissions.
> Section 553(a)(1) provides that [n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so. Section 605 similarly states that [n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. In addition, section 605 prohibits anyone unlawfully receiving such communications from divulging or publishing the information or transmission. Both sections contemplate civil (and criminal) enforcement measures. *Prostar*, 239 F.3d at 673 (internal quotations omitted).

The Court agrees with Defendant that the closest analogue in Texas law to § 553

is the Texas Theft Liability Act ("TTLA"). Tex. Civ. Prac. & Rem.Code §§ 134.001–

.005. The Texas law prohibits:

> (a) making a connection or attaching a device to either a "component of or media attached to a multichannel video or information services system" or "a television set, videotape recorder, or other receiver attached to a multichannel video or information services system," Tex. Penal Code § 31.12(a)(1)-(2);
> (b) tampering with or modifying "a device installed by a multichannel video or information services provider," Id. at § 31.12(a)(3); or
> (c) tampering with, modifying, or using "any unauthorized access device to obtain services from a multichannel video or information services provider," Id. at § 31.12(a)(4).

The "connection" or "device" prohibited in all of the foregoing subsections is a

connection or device "wholly or partly designed to make intelligible an encrypted,

5

encoded, scrambled, or other nonstandard signal carried by a multichannel video or information services provider." Id. at § 31.12(b)(1).

Texas also has a law that prohibits the interception of communication and is similar to § 605, the Texas Wiretap Act. Tex. Civ. Prac. & Rem.Code §§ 123.001–.004. That law provides a civil cause of action for (a) the interception or attempted interception of a communication, (b) using or divulging an intercepted communication, or (c) aiding or knowingly permitting the interception of a communication. *Id*. at § 123.002(a). Both Texas statutes cited by Defendant have two year statutes of limitations. Texas Civil Practice & Remedies Code § 16.003(a).

As with the federal provisions at issue here, Texas provides for both criminal and civil liability when a person uses a device to obtain cable or satellite services without authorization. Under § 31.12 of the penal code, a person commits an offense of theft of, or tampering with, multichannel video or information services if the person, without authorization, intentionally or knowingly uses an unauthorized access device to obtain services from a multichannel video or information services provider. Tex. Penal Code Ann. § 31.12 (West).

The relevant Texas statutes are different from the closest state analogue examined in *Prostar*, which was Louisiana's conversion law. The two reasons *Prostar* provided for rejecting Louisiana's conversion law are not applicable here. First, the *Prostar* court found that the Copyright Act and FCA "both protect proprietary rights in the context of cable transmissions" in a way that Louisiana's conversion statute did not. Prostar, 239 F.3d at 677. The court stated that the "conversion statute did not provide liability when mere copying occurred", but rather "conversion requires the wrongful deprivation of

6

one's possession of property." *Id.* Unlike the Louisiana conversion statute, the Texas statute does protect copying (protecting "encrypted, encoded, scrambled, or other nonstandard signals carried by a multichannel video or information services provider.") Tex. Penal Code § 31.12(b)(1). Second, the *Prostar* court found that the FCA and the Copyright Act have similar remedial structures in three ways; both statutes (1) allow for statutory and actual damages, (2) give discretion to the court to increase the statutory award for willful violations, and (3) provide for the award of costs and attorney's fees. The damage scheme of the TTLA is similar to the FCA in these ways. The TTLA allows for both statutory and actual damages (§§ 123.004(2)-(3) and 134.005(a)(1)), gives discretion to the court to increase the award for willful conduct (§§ 123.004(4) and 134.005(a)(1)), and provides for attorney's fees (§§ 123.004(2)-(3) and 134.005(b)). However, the TTLA cannot be considered equivalent because § 134.005(a)(1) requires a party first to recover actual damages, and after that, may only receive "in addition to actual damages, damages awarded by the trier of fact in a sum not to exceed $1,000." The TTLA also does not provide injunctive relief, whereas the FCA does. § 134.005.

Still, the inquiry in the first level of the *Prostar* analysis is simply to identify the state statute that is most analogous. Despite differences between the FCA and these Texas statutes in their liability and remedial structures, TTLA and the Texas Wiretap Act are the closest state analogues to the FCA.

**B. Determine Whether the State Limitations Period is in Conflict with the FCA**

The second level of the *Prostar* analysis is to determine whether application of the state limitations period is at odds with the FCA's "purpose or operation, or frustrates or interferes with the intent behind it." *Prostar*, 239 F.3d at 675, *citing North Star*, 515

U.S. at 35. Although Louisiana's conversion law provided for a one year statute of limitations (shorter than the two year statute of limitations provided by Texas laws), the *Prostar* court was "not prepared to say that one year is too short as a matter of law for investigation and detection of violations," and did not find that one year was "insufficient". *Prostar*, 239 F.3d at 676. Instead, the *Prostar* court was motivated by the need for national uniformity, stating that "cable companies engage in multistate activities and would consequently be required to "make fifty separate decisions in their efforts to investigate and pursue cable piracy," and "a single federal standard would eliminate these practical difficulties, facilitating resolution of the national problems addressed by the FCA." *Prostar*, 239 F.3d at 676-77. *Prostar's* ruling is binding upon this Court, and *Prostar* clearly holds that it would frustrate the purpose of the FCA to impose state laws with varying limitations periods. Even if the Texas law is a closer analogue to the FCA than the Copyright Act, this fact would not vary *Prostar's* ruling on the second level of analysis. *Prostar* instructs that "if a state limitations period would not generate such adverse consequences, then the state limitations period applies and our inquiry is concluded." The inquiry cannot be concluded here, because *Prostar* found that a state limitations period *would* generate the adverse consequences due to a lack of national uniformity.

## C. Determine if a Federal Law Affords a Closer Analogy to the FCA than a State Law

In the third level of analysis, the Court examines whether a federal law affords a closer analogy than state law. Defendant argues that two federal circuit courts have determined that state anti-piracy laws afford a closer fit to §§ 553 and 605 than any federal statute. *See Kingvision Pay-Per-View, Corp., Ltd. v. 898 Belmont, Inc.,* 366 F.3d

8

217 (3d Cir. 2004); *DirecTV, Inc. v. Webb,* 545 F.3d 837 (9th Cir. 2008). A Texas appellate court has found that the TTLA "is a state law analogue that parallels §§ 553 and 605" better than any federal statute. *J & J Sports Productions, Inc. v. JWJ Mgmt., Inc.*, 324 S.W.3d 823 (Tex. App. 2010).

However, there are some differences between the FCA and the Texas statutes that this Court must examine. For example, the Texas statutes do not provide for vicarious liability, which is a significant tort doctrine in cable piracy violations. Many cable piracy cases have relied upon a vicarious liability theory. *See, e.g., J & J Sports Productions, Inc. v. Q Cafe, Inc.*, 3:10-CV-02006-L, 2012 WL 215282 (N.D. Tex. Jan. 25, 2012); *J&J Sports Prods. v. Martinez*, 2012 U.S. Dist. LEXIS 86533 (N.D. Tex. June 19, 2012); *Zuffa, LLC v. Trappey*, CIV.A. 11-0006, 2012 WL 1014690 (W.D. La. Mar. 22, 2012); *Joe Hand Promotions, Inc. v. Sorota*, 11-80985-CIV, 2012 WL 2414035 (S.D. Fla. June 26, 2012). Second, the Texas statutes require a finding of intent while the FCA is strict liability. *See* § 31.02 (requiring intentional or knowing conduct); *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 191 (5th Cir. 2000), interpreting the Texas Wiretap Act, ("the restriction applies *only* if the using or disclosing person knows, or has reason to know, of the illegal manner of acquisition"). Third, the Texas wiretap act was passed to apply to aural communications, not visual-only ones. *See* § 123.001(2). This difference is not particularly problematic since neither side claims that the Program was purely visual, and thus, it would not be exempted from the reach of the Texas wiretap act.

Furthermore, this Court recognizes that the state statutes need not be perfectly aligned to the federal statute to be considered closely analogous. In comparing the FCA to state cable piracy statutes, other federal circuits have allowed divergences between

9

their state statutes and the FCA. For example, the Ninth Circuit found California's piracy statute, despite requiring intent, was closely analogous to the FCA, a strict liability statute. *Kingvision*, 366 F.3d at 217; Cal. Penal Code § 593d (West) (requiring knowing and willful conduct). Indeed, the Supreme Court has instructed courts that federal statutes of limitations are to be borrowed only in exceptional circumstances and that if there is a parallel state statute, it should be favored. *North Star,* 515 U.S. at 34. Thus, the Court finds that the differences between the Texas statutes and the FCA are not dispositive, and the two statutes are sufficiently similar to be considered "closely analogous". *North Star Steel Co. v. Thomas,* 515 U.S. 29, 34 (1995); *see J & J Sports Productions, Inc. v. JWJ Mgmt., Inc.*, 324 S.W.3d 823 (Tex. App. 2010) (finding the same, but not being bound by the Fifth Circuit to follow *Prostar*).

This Court has engaged in all three levels of analysis, as instructed by *Prostar*. This Court finds that the relevant Texas statutes are sufficiently analogous to the FCA, but this Court is bound by *Prostar*'s finding that diverging from a nationally uniform three year statute of limitations would frustrate the purpose of the FCA. Other district courts in Texas have come to the same conclusion. *See Kingvision Pay-Per-View, Ltd. v. Betancourt*, CIV.A. H-11-0236, 2011 WL 1900166 (S.D. Tex. May 19, 2011); *J & J Sports Productions, Inc. v. Orellana,* CIV.A. H-11-0574, 2011 WL 3021861 (S.D. Tex. July 22, 2011); *Joe Hand Promotions, Inc. v. Cindy's Gone Hog Wild*, Civil Action No. 1:11-cv-00096-LY (W.D. Tex. Aug. 9, 2011); *J&J Sports Prods, Inc. v. Cindy's Gone Hog Wild*, 2011 U.S. Dist. LEXIS 97501, *2-6 (W.D. Tex. Aug. 29, 2011); *J&J Sports Prods., Inc.v . Orellana*, Civil Action No. 4:11-cv-01598) (S.D. Tex. Sep. 7, 2011); *J&J Sports Prods, Inc. v. Kreka Private Club, Inc.*, Civil Action No. 3:11-cv-00204-P (N.D.

Tex. Dec. 15, 2011); *J&J Sports Prods, Inc. v. Monclova Food Servs, Inc.*, Civil Action No. 4:11-cv-03704 (S.D. Tex. Jan. 25, 2012); *J&J Sports Prods, Inc. v. Garcia*, Civil Action No. 5:11-cv-01047-OLG-JWP (W.D. Tex. March 13, 2012); *J&J Sports Prods, Inc. v. Gutierrez*, Civil Action No. 5:11-cv-01044-OLG-PMG (W.D. Tex. March 19, 2012); *J&J Sports Prods, Inc. v. Gutierrez*, Civil Action No. 5:11-cv-01044-OLG-PMG (W.D. Tex. April 13, 2012); *Joe Hand Promotions, Inc. v. VS Jr, Inc*., 2012 U.S. Dist. LEXIS 97434 (S.D. Tex. July 12, 2012).

The Court acknowledges that national uniformity no longer exists with regard to the FCA, since other courts have looked to their own state's statute of limitations rather than the one provided by the Copyright Act. *Kingvision*, 366 F.3d at 217; *DirecTV, Inc.,* 545 F.3d at 837; *J&J Sports Productions, Inc. v. W. Side Stories*, 5:10-CV-179-F, 2011 WL 2899139 (E.D.N.C. July 18, 2011). This Court is also troubled that *Prostar's* holding strongly relies on national uniformity to choose a federal analogue over a state one. A general preference for uniformity seems an insufficient reason to apply the limitations period of the closest federal analogue. *See, e.g.*, *North Star*, 515 U.S. at 36 *cited by Kingvision*, 366 F.3d at 222; *See also Reed*, 488 U.S. at 327 (rejecting a similar argument relying on uniformity). The Supreme Court noted, in *North Star*, that "the practice of adopting state statutes of limitations for federal causes of action can result in different limitations periods in different States for the same federal action.... But these are just the costs of the rule itself...." *North Star*, 515 U.S. at 36. Additionally, the Supreme Court has articulated that "*even where geographic considerations counsel federal borrowing*, the aforementioned presumption of state borrowing requires that a court determine that an analogous federal source truly affords a 'closer fit' with the cause of action at issue than

11

does any available state-law source." *Lampf, Pleva, Lipkind, Prupis & Petgrow v. Gilbertson,* 501 U.S. 350, 357 (1991) (emphasis added). However, this Court must leave these dilemmas to the Fifth Circuit and is bound by *Prostar's* determination that the FCA is a statute requiring national uniformity, thus necessitating the application of the Copyright Act's three year statute of limitations. Therefore, the Court finds that Defendant's Motion must be **DENIED**.

      **IT IS SO ORDERED.**

      **SIGNED** at Houston, Texas on this the 31st day of October, 2012.

_____

**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**